1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7    CARLEEN A DURKIN,

Case No. 25-cv-03064-WHO

Plaintiff,

8
9    v.

**ORDER GRANTING MOTION TO COMPEL ARBITRATION**

10    MERCEDES-BENZ USA LLC,

Re: Dkt. No. 13

Defendant.

11

12

13         Plaintiff Carleen Durkin filed this action on February 25, 2025, in the Superior Court of

14    California, County of Marin, against defendant and vehicle manufacturer Mercedes-Benz, USA

15    ("MBUSA"). Durkin alleges two claims for violations of the Song-Beverly Consumer Warranty

16    Act, arising out of Durkin's lease of a 2023 Mercedes-Benz EQB-Class (the "Vehicle"). MBUSA

17    removed the case to federal court on April 3, 2025, and now moves to compel arbitration.[1] As an

18    intended third-party beneficiary of the arbitration provision contained in the lease that Durkin

19    signed with the dealership upon leasing the Vehicle, MBUSA is entitled to compel arbitration.

20    The motion is GRANTED, and Durkin's claims are stayed pending arbitration.

21                                        **BACKGROUND**

22         On or about April 8, 2024, Durkin leased the Vehicle, signing a Motor Vehicle Lease

23    Agreement with Lessor (Dealer), Mercedes-Benz of Marin. *See* Declaration of Ali Ameripour

24    ("Ameripour Decl."), Ex. 2 (Lease). The Lease defined the "Parties" as follows: "you," "your,"

25    and "yours," referred to Durkin; "we," "us," and "our," referred to Mercedes-Benz of Marin, and

26

27    [1] Upon reviewing the parties' submissions, I determined that this matter was suitable for resolution

28    without oral argument and vacated the hearing that was set for July 16, 2025. *See* Civ. L. R. 7-1(b).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    after "the lease [was] assigned," to Mercedes-Benz Vehicle Trust, or its successors and assigns;

2    and "Assignee" referred to Mercedes-Benz Vehicle Trust, or its successors and assigns.  *Id.* at p. 1.

3    The Lease also contained an arbitration provision under the heading, "*Important Arbitration*

4    *Disclosures.*" *Id.* at p. 4.  That provision provided in relevant part:

5           "Any claim or dispute, whether in contract, tort or otherwise (including any dispute over the
            interpretation, scope, or validity of this lease, arbitration section or the arbitrability of any

6           issue), between you and us or any of our employees, agents, successors, assigns, or the
            vehicle distributor, *including Mercedes-Benz USA LLC (each a "Third-Party Beneficiary")*,

7           which arises out of or relates to a credit application, this lease, *or any resulting transaction
            or relationship arising out of this lease* (including any such relationship with third parties

8           who do not sign this contract) shall, at the election of either you, us, *or a Third-Party
            Beneficiary*, be resolved by a neutral, binding arbitration and not by a court action."

9

10   *Id.* at p. 4 (emphasis added).

11         On May 29, 2025, MBUSA filed its Motion to Compel Arbitration.  Motion to Compel

12   Arbitration ("Mot.") [Dkt. No. 13].  Durkin opposes arbitration, arguing that MBUSA is not an

13   intended third-party beneficiary of the Lease's arbitration clause and may not rely on equitable

14   estoppel to force Durkin to arbitrate because her claims are not intimately intertwined with the

15   Lease.  Opposition to Motion ("Oppo.") [Dkt. No. 18].

16                                   **LEGAL STANDARD**

17         "[T]he Federal Arbitration Act (FAA) makes agreements to arbitrate 'valid, irrevocable,

18   and enforceable, save upon such grounds as exist at law or in equity for the revocation of any

19   contract.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011) (quoting 9 U.S.C. § 2).

20   "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but

21   instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to

22   which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S.

23   213, 218 (1985); *see also Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th

24   Cir. 2004). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of

25   arbitration." *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 938 (9th Cir. 2013) (citation

26   omitted).

27         Generally, in deciding whether to compel arbitration, the court must determine whether (1)

28   there is an agreement to arbitrate between the parties; and (2) the agreement covers the dispute.

1   *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).  A litigant who is not a party to the

2   arbitration agreement may invoke arbitration under the FAA if the relevant state contract law

3   allows the litigant to enforce the agreement. *Herrera v. Cathay Pac. Airways Ltd*., 104 F.4th 702,

4   707 (9th Cir. 2024) (as amended).  In California, a non-signatory may be entitled to enforce an

5   arbitration agreement: (1) if the non-signatory is an intended third-party; or (2) through the

6   doctrine of equitable estoppel. *See id*.; *Murphy v. DirecTV, Inc*., 724 F.3d 1218, 1233-34 (9th Cir.

7   2013).

**DISCUSSION**

9   In California, a nonsignatory may be able to enforce an Arbitration Agreement either as an

10  (1) intended third-beneficiary, *see Herrera v. Cathay Pac. Airways Ltd*., 104 F.4th 702, 707 (9th

11  Cir. 2024), or (2) through the doctrine of equitable estoppel, provided that certain stringent

12  requirements are met, *see Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128-29 (9th Cir. 2013).

13  MBUSA argues that it may compel arbitration under either theory.  Because I conclude that

14  MBUSA may compel arbitration as a third-party beneficiary to the Lease, I do not reach the issue

15  of equitable estoppel.

16  Third-party beneficiaries may enforce the provisions of a contract if they demonstrate that

17  "in light of the 'relevant circumstances'" (1) "the third party would in fact benefit from the

18  contract;" (2) "a motivating purpose of the contracting parties was to provide a benefit to the third

19  party;"[2] and (3) "permitting the third party to enforce the contract 'is consistent with the objectives

20  of the contract and the reasonable expectations of the contracting parties.'" *Ngo v. BMW of N.*

21  *Am., LLC*, 23 F.4th 942, 946 (9th Cir. 2022) (quoting *Goonewardene v. ADP, LLC*, 6 Cal. 5th 817,

22  830 (2019)); *see* Cal. Civ. Code § 1559 (providing that a nonsignatory to a contract may enforce

23  that contract as a third-party beneficiary only if the contract was "made expressly for [the

24  nonsignatory's] benefit.").

25  MBUSA bears the burden of proving that it is a third-party beneficiary of the Lease.  *See*

26

27  [2] The Ninth Circuit has held that to meet the standard laid out by section 1559, it is not enough
    that the contracting parties know that the third party will benefit as a result of the contract; the
    "parties to the contract must have intended the third party to benefit." *Norcia v. Samsung*
28  *Telecommunications America, LLC*, , 1290-1291 (9th Cir. 2017).

United States District Court
Northern District of California

United States District Court
Northern District of California

1   *Murphy*, 724 F.3d at 1234 (quoting *Garcia v. Truck Ins. Exch.*, 36 Cal. 3d 426 (1984)).  It has

2   carried that burden.  The arbitration provision in the Lease expressly sets forth that MBUSA as a

3   "Third Party Beneficiary" to the Lease may compel arbitration.  This shows that MBUSA would

4   "in fact" benefit from the Lease and accordingly satisfies the first factor laid out by the Ninth

5   Circuit in *Ngo*.  Similarly, that MBUSA was expressly named in the arbitration provision shows

6   that the contracting parties purposefully provided that benefit to MBUSA, satisfying the second.

7   *See Ngo*, 23 F.4th at 946.  And finally, allowing MBUSA to enforce the arbitration provision

8   would not be inconsistent with "the objectives of the contract and the reasonable expectations of

9   the contracting parties" because the arbitration provision provides that MBUSA may compel to

10   arbitration any claims or disputes arising out of or relating to the Lease or "any resulting

11   transaction or relationship arising out of" it.  *See* Ameripour Decl., Ex. 2, at p. 4.  Durkin's

12   relationship with MBUSA arises out of the Lease.  All these factors lead me to conclude that

13   MBUSA is entitled to compel Durkin's claims against it to arbitration.

14   Other courts in this circuit have reached the same conclusion with respect to identical

15   arbitration agreements in cases also involving MBUSA.  *See e.g.*, *Smalheiser, et al. v. Mercedes-*

16   *Benz USA LLC*, No. 3:24-cv-00219-JD (N.D. Cal.), Dkt. No. 26 (Order by the Hon. James Donato,

17   granting MBUSA's Motion to Compel Arbitration, and explaining that, per an identical Lease

18   agreement, MBUSA is named as a third-party beneficiary, which clearly was done "expressly for

19   [its] benefit."); *Attalah, et al. v. Mercedes-Benz USA, LLC, et al.*, No. 24-cv-01245-JDE (C.D.

20   Cal.) (Minute Order granting MBUSA's Motion to Compel Arbitration in a Song-Beverly Act

21   action, finding that MBUSA was a third-party beneficiary of an identical arbitration provision).

22   Durkin argues that MBUSA is not a third-party beneficiary because it is not receiving a

23   clear benefit from the Lease.  Oppo. 10-13.  Her argument is belied by the express language of the

24   arbitration provision, which names MBUSA as a third-party beneficiary and gives it the power to

25   compel arbitration of matters like this one that arise out of or relate to the Lease or any

26   relationship arising from the Lease.  The relationship that Durkin shares with MBUSA arises out

27   of the Lease; Durkin would not have a relationship with MBUSA as the Vehicle's manufacturer

28   *but for* the Lease.  That the arbitration provision gives MBUSA the power to compel arbitration of

4

1    claims like Durkin's clearly confers a benefit upon MBUSA.

2        Durkin's arguments rely on inapplicable cases where the non-signatory vehicle

3    manufacturer was not named as a third-party beneficiary in the lease that the plaintiff signed.  For

4    that reason, other factors had to be considered in determining whether the contract's arbitration

5    clause was intended to benefit the non-signatory manufacturer.  *See e.g.*, *Ngo v. BMW of North*

6    *America*, 23 F.4th 942 (9th Cir. 2022) (where only the lessor, lessee, and dealership's assignee of

7    the contract, which was not the manufacturer, were allowed to compel arbitration).  Here, MBUSA

8    is named.

9        Durkin's contention that MBUSA cannot enforce the arbitration provision because

10    warranty obligations (which undergird her Song-Beverly Act claims) are independent of the Lease

11    fares no better.  This contention rests on the equitable estoppel doctrine.  Under that doctrine, a

12    non-signatory may invoke an arbitration agreement in a contract "when a signatory must rely on

13    the terms of the written agreement in asserting its claims against the nonsignatory or the claims are

14    intimately founded in and intertwined with the underlying contract," and "when the signatory

15    alleges substantially interdependent and concerted misconduct by the nonsignatory and another

16    signatory and the allegations of interdependent misconduct are founded in or intimately connected

17    with the obligations of the underlying agreement." *Ngo*, 23 F.4th at 948-49.  But the *Ngo* analysis,

18    which considers the "intertwined" nature of the plaintiff's claims and the underlying contract, has

19    no bearing on the foregoing third-party beneficiary analysis, where MBUSA is an express

20    intended beneficiary of the contract.

21        The arbitration agreement in the Lease permits MBUSA to compel arbitration of "[a]ny

22    claim or dispute, whether in contract, tort or otherwise . . . which arises out of or relates to … this

23    lease, or any resulting transaction or relationship arising out of this lease (including any such

24    relationship with third parties who do not sign this contract) . . ." Ameripour Decl., Ex. 2, at p. 4.

25    The relationship between MBUSA and Durkin, which gives rise to her claims against MBUSA,

26    arose out of the Lease.  Her claims fall within the scope of the arbitration agreement.

**CONCLUSION**

28        For the foregoing reasons, the motion to compel arbitration is GRANTED.  The action is

United States District Court
Northern District of California

1   STAYED pending completion of arbitration, and all dates and deadlines are vacated.  The parties

2   are ORDERED to file a Notice and Request to Lift Stay within 30 days after arbitration is

3   completed.  If no such Notice has been filed within six (6) months of the date below, the parties

4   are ORDERED to file a Joint Status Report regarding the status of arbitration.

5   **IT IS SO ORDERED.**

6   Dated: July 15, 2025

William H. Orrick
United States District Judge

United States District Court
Northern District of California

6